RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 04a0411p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 03-5586

JAMES SHANNON OLIVER,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Kentucky at Covington.
No. 02-00037—David L. Bunning, District Judge.

Submitted: September 22, 2004

Decided and Filed: November 29, 2004

Before: SILER, BATCHELDER, and ROGERS, Circuit Judges.

_____

**COUNSEL**

**ON BRIEF:** Jason Rapp, McCOY, WEST, FRANKLIN & BEAL, Lexington, Kentucky, for Appellant. Charles P. Wisdom, Jr., ASSISTANT UNITED STATES ATTORNEY, Lexington, Kentucky, for Appellee.

_____

**OPINION**

_____

ROGERS, Circuit Judge. Defendant James Oliver pled guilty to one count of possession of a semiautomatic weapon in violation of 18 U.S.C. §§ 924(c)(1)(A) and (B)(i). The statute mandates a minimum sentence of ten years if a firearm used during drug trafficking "is a . . . semiautomatic assault weapon . . . ." 18 U.S.C. § 924(c)(1)(B)(i). The only question presented on appeal is whether the firearm in question met the statutory definition of a semiautomatic assault weapon, thereby requiring the increased minimum sentence. 18 U.S.C. § 921(a)(30)(B) defines a semiautomatic assault weapon to include "a semiautomatic rifle that has an ability to accept a detachable magazine and has . . . (ii) a pistol grip that protrudes *conspicuously beneath* the action of the weapon . . . [and] (iv) a flash suppressor . . . ." (emphasis added). The district court held that the firearm had both a flash suppressor and a pistol grip that extended conspicuously beneath the action. In doing so, the district court rejected the defendant's argument that the pistol grip did not protrude "conspicuously beneath" the action of the weapon because the grip was below and to the rear of, and not directly beneath, the action. Because the language "protrude conspicuously beneath" does not require the pistol grip to be "directly under" the action, we affirm the defendant's sentence.

1

Oliver was indicted on six counts related to drug trafficking. Pursuant to a plea agreement, two counts were dismissed and Oliver pled guilty to four counts involving weapons and forfeiture. He was also allowed to argue at sentencing that the Ruger, Mini 14 Ranch Rifle ("Ruger"), which he possessed, was not a semiautomatic assault weapon as defined in 18 U.S.C. § 921(a)(30). After a sentencing hearing, which dealt primarily with the nature of the Ruger, the district court determined that the Ruger met the definition of a semiautomatic assault weapon. Relying on this finding, the district court concluded that Oliver was subject to a mandatory ten year minimum sentence under 18 U.S.C. § 924(c)(1)(B)(i).[1] Oliver was sentenced to imprisonment for 160 months —40 months for the marijuana conviction, which is not at issue in this case, and 120 months for possession of a semiautomatic weapon.[2] On appeal, Oliver argues that the district court improperly determined that the Ruger was a semiautomatic assault weapon. Specifically, Oliver argues that the pistol grip did not protrude "conspicuously beneath" the action because, he claims, "conspicuously beneath" means "directly under" instead of generally below.

The district court, however, properly determined that the pistol grip of the firearm in question "protruded  conspicuously beneath" the action. A semiautomatic assault weapon is defined, inter alia, as:

> (B) a semiautomatic rifle that has an ability to accept a detachable magazine and has at least 2 of —
>> (i) a folding or telescoping stock;
>> (ii) a pistol grip that *protrudes conspicuously beneath* the action of the weapon;
>> (iii) a bayonet mount;
>> (iv) a flash suppressor or threaded barrel designed to accommodate a flash suppressor; and
>> (v) a grenade launcher.

18 U.S.C. § 921(a)(30)(B) (emphasis added). The district court determined that the Ruger was a semiautomatic assault weapon because it had a detachable magazine, had a pistol grip conspicuously beneath the action of the weapon, and had a flash suppressor. Oliver concedes that the Ruger had a detachable magazine and a flash suppressor; thus, the interpretation of the phrase "conspicuously beneath the action" in 18 U.S.C. § 921(a)(30)(b)(ii) is the only issue before us.

Expert testimony established that the "action" of the weapon is "anywhere the bolt travels." In the following picture of the type of firearm in question, the upper bracket identifies the action, and the lower bracket identifies the pistol grip:



Taken out of the context of "conspicuous protruding," the words "beneath the action" could mean "lower than the action" or "under the action" or possibly "directly below the action." Only the last

---

[1] Parenthetically, we note that the statutory enhancement for semiautomatic assault weapons has recently been allowed to expire. *See* Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, § 110105(2), 108 Stat. 1796, 2000 (1994); 18 U.S.C. § 924 note (noting that the 1994 amendments expire on September 13, 2004).

[2] Pursuant to 18 U.S.C. § 924(c)(1)(D)(ii), any sentence for possession of a firearm in connection with drug trafficking  must run consecutively to the sentence for the underlying drug trafficking crime.

possibility would help Oliver. No case or other authority, and no underlying policy of the statute, supports the last possibility.[3]

An analysis of plain meaning in no way leads us to the "directly under" interpretation. In common parlance, the word "beneath" continues to bear its original primary meaning of "lower than." The Oxford English Dictionary explains:

> The prepositional use of *beneath* seems originally to have been introduced to express the general notion of "lower than," as distinguished from the specific sense of UNDER. But in process of time *beneath* was so largely used for *under*, that BELOW was laid hold of to express the more general idea. In ordinary spoken English, *under* and *below* now cover the whole field (*below* tending naturally to overlap the territory of *under*), leaving *beneath* more or less as a literary and slightly archaic equivalent of both (in some senses), but especially of *under*.

OXFORD ENGLISH DICTIONARY, Vol II, p. 108 (1989), *available at* http://www.oed.com. This excerpt demonstrates that, while "beneath" can mean "under," it does not necessarily mean "directly under," and, in any event, "beneath" can also take its original connotation of "lower than." Thus, in the following excerpt from Oliver Wendell Holmes's classic poem, *Old Ironsides*, "beneath" is clearly used to locate the naval battle generally down from the ship's ensign, and not just perpendicularly below it.

> Ay, tear her tattered ensign down!
> Long has it waved on high,
> And many an eye has danced to see
> That banner in the sky;
> Beneath it rung the battle shout,
> And burst the cannon's roar;–
> The meteor of the ocean air
> Shall sweep the clouds no more!

Thus, without regard to the word's context in the statute, we could read the word "beneath" to mean "generally under" rather than "directly below."

The statutory context, however, militates against the "directly below" interpretation. The statute does not say "located beneath the action" or "affixed beneath the action," in which case the drafters would presumably be focusing on the precise location. Instead, the prepositional phrase "beneath the action" modifies the word "protrudes," and does so only after the adverb "conspicuously." The focus of the statutory provision is conspicuous protrusion, and the adverbial prepositional phrase "beneath the action"

---

[3]One case relied upon by Oliver provides him little support. In *United States v. Spinner*, 152 F.3d 950 (D.C. Cir. 1998), the defendant was convicted of possession of a semiautomatic assault weapon in violation of 18 U.S.C. § 922(v)(1). *Spinner*, 152 F.3d at 953, 955. At trial, the government introduced expert testimony that described the firearm at issue as containing a detachable magazine, a telescoping stock, and a "pistol grip that *extends beyond the bottom of the receiver*." *Id.* at 954. The government never submitted additional evidence defining the term "receiver" or "action." *Id.* Thus, the jury never heard testimony about whether the pistol grip was conspicuously beneath the action, instead of the receiver. *Id.* at 957. Using plain error review, the D.C. Circuit determined that the government failed to provide sufficient evidence of all of the elements of the statute. *Id.* at 956-58. The court explained, "[The expert] clearly used ["receiver"] as a term of art . . . . Since the prosecutor never asked [the expert] to explain what he meant by 'receiver,' and never asked [the expert] whether 'receiver' was equivalent to the statutory term 'action,' the jury was not given any evidence to support a conclusion that the [alleged semiautomatic weapon] possessed 'a pistol grip that protrudes conspicuously beneath the action of the weapon.'" *Id.* at 957 (quoting 18 U.S.C. § 921(a)(30)(B)(ii)). Oliver interprets *Spinner* to mandate that "while the pistol grip may be 'at a lower point' of the gun than a section termed the 'receiver,' it must be shown to be 'directly under' the action." He bases his analysis on the fact that, if "beneath" just generally means "under," the pistol grip would always be under the action or the receiver, and the fact that the terms of art were not explained in Spinner's case would be moot. The *Spinner* court, however, was obviously more troubled by the use of the term "receiver" than the use of "beneath."

merely tells the general direction in which the grip conspicuously protrudes. It is only natural for the drafters to set out the general direction of the "protrusion" while requiring, as a matter of limitation, that the protrusion be conspicuous. The context, in other words, gives no hint that precise location mattered, as opposed to general direction. Plain meaning thus leads us to the conclusion that the district court's interpretation is correct.

Our interpretation is moreover solidly confirmed by the legislative history, which demonstrates exactly why Congress cared about whether a pistol grip "protrudes conspicuously beneath the action," and which has nothing to do with the grip's being located directly below the action, as opposed to extending in a generally downward direction.

When enacting the ban on semiautomatic assault weapons, Congress was seeking to curb the threat posed by the growing number of "criminals and mentally deranged individuals armed with semi-automatic assault weapons." H.R. REP. NO. 103-489 (1994), *reprinted in* 1994 U.S.C.C.A.N. 1820; *see also Olympic Arms v. Buckles*, 301 F.3d 384, 386 (6th Cir. 2002) (tracing the roots of the semiautomatic assault weapons ban to the purpose of the 1968 statute, which sought to "'strengthen federal controls over interstate and foreign commerce in firearms and to assist the States effectively to regulate firearms traffic within their borders'" (quoting H.R. Rep. No. 90-1577 (1968), *reprinted in* 1968 U.S.C.C.A.N. 4410, 4411)); Michael G. Lenett, *Taking a Bite Out of Violent Crime*, 20 U. DAYTON L. REV. 573 (1995) (providing an extensive legislative history of the semiautomatic assault weapons ban).

The language of the statute closely tracks that found in a 1989 ATF report. *See* Daniel R. Black, Report and Recommendation on the Importability of Certain Semiautomatic Rifles (July 6, 1989), *available at* http://www-2.cs.cmu.edu/afs/cs/user/wbardwel/public/nfalist/atf_1989_report.txt ("ATF Report"). The ATF Report found that semiautomatic weapons contained features of modern military assault rifles and then described these features. ATF Report, Part A. The features included the ability to accept a detachable magazine, folding or telescopic stocks, pistol grips, bayonet mounts, flash suppressors, bipods, and grenade launchers. *Id*. at Part A.1. The ATF Report explained:

> The vast majority of military firearms employ a well-defined pistol grip that protrudes conspicuously beneath the action of the weapon. In most cases, the "straight line design" of the military weapon dictates a grip of this type so that the shooter can hold and fire the weapon. Further, a pistol grip can be an aid in one-handed firing of the weapon in a combat situation. Further, such grips were designed to assist in controlling machineguns during automatic fire. On the other hand, the vast majority of sporting firearms employ a more traditional pistol grip built into the wrist of the stock of the firearm since one-handed shooting is not usually employed in hunting or competitive target competitions.

*Id*. at Part A.1.c (footnote omitted).

The legislative history indicates that Congress intended to ban non-sporting rifles. Pistol grips, such as the one in this case, aid the shooter in firing one-handed—a task not often required in hunting. The alternative to a pistol grip under the magazine is typically a pistol grip in the wrist of the stock of a firearm, and the pistol grip in this case does not meet that description. This history demonstrates that the "protrudes conspicuously beneath the action" characteristic of an assault weapon is aimed at one-handed shooting. A conspicuously protruding pistol grip facilitates one-handed shooting, but it entirely escapes us how a pistol grip's being located below and slightly to the rear of the action makes the weapon any less likely to be used one-handed than if the grip is directly under the action. The policy underlying the definition thus clearly supports the "generally below" meaning of "beneath." In contrast, we are presented with no indication that some legislative purpose might support the reading of "beneath the action" as a precise limitation on the grip's location, rather than as a general direction for the protrusion that must be conspicuous.

AFFIRMED.